F. H. MEYER, Appellee, v. E. P. BROGAN et al., Appellants.

**FRAUDULENT CONVEYANCES:** Evidence—Issuance of Check
1   with Understanding for Non-Payment—Garnishment. The issu-
ance of a check, by one subsequently garnished as a debtor of the
beneficiary of the check, with an understanding that payment will
not be called for, is, under the record, transparently fraudulent.
(See Section 5042, Code, 1897.)

GARNISHMENT: Persons and Property Subject—Good-Faith Dis-
2 bursements by Garnishee. A garnishee will be protected in good-
faith disbursements made prior to garnishment. So held where
garnishee had, prior to garnishment, and with the consent of the
guardian of the judgment defendant, paid a note owed by such
judgment defendant.

GARNISHMENT: Persons and Property Subject—Debt Created by
3 ''Charge'' on Lands. One *accepting* a conveyance of land, sub-
ject to a charge thereon in a stated amount in favor of another, is
subject to garnishment as a debtor of such other.

DEEDS: Conditions and Restrictions—Charges on Lands—Implied
4 Agreement to Pay. Principle recognized that the *acceptance* of
a conveyance of lands burdened with an obligation to pay a stated
sum to another, constitutes an implied agreement to pay such sum
to such other person.

*Appeal from Sac District Court.*—E. G. ALBERT, Judge.

WEDNESDAY, JANUARY 17, 1917.

THE opinion states the essential facts.—*Modified and affirmed.*

*J. P. Conner,* for appellant.

*W. A. Hellsell,* for appellees.

WEAVER, J.—The record in this case is confused by the filing of a multiplicity of abstracts, amendments and denials; but, arranging and co-ordinating them as best we can, the case presented is substantially as follows: The plaintiff in a prior action or proceeding in the court below had recovered judgment against E. P. Brogan and Ellen Brogan, and, upon execution issued thereon, a notice of garnishment was served upon Frank Brogan, Mary Brogan and Lizzie Brogan individually, and upon Frank Brogan as administrator of the estate of John Brogan. On hearing in the garnishment proceedings, it was developed that, prior to the beginning of

said proceedings, one Jane Brogan, mother of the garnishees, conveyed to them in common about 440 acres of land, subject, however, to a reserved life estate in the grantor, and subject also to certain charges provided for in the deed of conveyance, in words as follows: ·

"This land is conveyed subject to $2,000 to be paid by the grantees to my son James Brogan within 12 months after my death; and subject to $1,000 to be paid to my son William Brogan within 2 years after my death; and subject to $500 to be paid to my son Edward Brogan within 2 years after my death; and subject to $1,000 to be paid to my son Tom Brogan within 2 years after my death."

The deed further provides that these several amounts shall be a lien on the land "in favor of my said sons." The said Jane Brogan has since died. It was further shown on the hearing that Frank Brogan was also administrator of the estate of John Brogan, father of the garnishees, and that, on settlement of the estate, there was left in his hands for payment to Edward Brogan, who is also known in the record as E. P. Brogan, the sum of $359.44. The trial court, after hearing the evidence, held Frank Brogan, as administrator, liable under the garnishment for the distributive share of Edward in the estate of his father, and also held the three garnishees liable to account in said proceedings for the sum of $500 which had been charged upon their land in favor of Edward Brogan, reduced, however, by a set-off of $53.73, which had been expended by Lizzie Brogan for the benefit of Edward.

The record does not make it clear whether the appeal is taken by all of the defendants and garnishees or by some of them only, but, as no question is raised thereon, we will assume it to have been taken by all the parties adversely affected—judgment defendants and garnishees.

The questions argued in the briefs are: (1) Whether the record shows there was any money in the hands of Frank Brogan, received by him as administrator and due to Edward

Brogan; and (2) whether the charge of $500 imposed upon the land conveyed to the garnishees constituted a debt or personal obligation due from them to Edward, in such a sense that the amount was liable to garnishment in their hands.

I.   As to the first question, it is not denied that Edward became entitled, upon final distribution of John Brogan's estate, which had been administered upon by Frank, to the sum of $359.44.   The latter resists the garnishment on the following ground:   He shows that, very shortly before the garnishment, he drew a check for $359.44, payable to Edward Brogan or order, which he passed over into the possession of Ellen Brogan, who is mentioned as Edward's guardian, under an arrangement by which the check was not paid; or, if paid, the money was immediately returned to Frank, to hold, as he says, "as custodian for her," and he still retains it.   On the trial, the check was exhibited in court in the hands of Ellen Brogan, or of the garnishees' counsel.   On further examination, he says:

1. FRAUDULENT CONVEYANCES: evidence: issuance of check with understanding for nonpayment: garnishment.

"Ellen Brogan never got any money on this check.   She signed [endorsed?] the check, but I was to keep the money."

In still another place, some claim is made that the money was left in his hands to secure him against liability on the bond given by Ellen as the guardian of Edward.   We think, however, the trial court was justified in holding that this manipulation of money and check was a transparent device to keep the fund away from Edward's creditors, and that it was properly held of no avail.

Of apparently more merit is the claim for a set-off of $162, arising as follows: Edward Brogan was indebted to one Casey upon a promissory note.   Casey endorsed the note to Frank without recourse, receiving from Frank the amount of the debt.   The plaintiff's position is that the payment to Casey was of a voluntary character, and cannot be

2. GARNISHMENT: persons and property subject: good-faith disbursements by garnishee.

used as the basis of a counterclaim. It is true that Frank says that Edward did not ask him to pay Casey, and that he had not demanded payment from Edward, but we think it may fairly be said that, by the endorsement and delivery of the note to Frank, he became the owner thereof, and that, in justice and fairness, he should be allowed credit therefor in fixing the amount for which he is to be held liable on the garnishment. It is shown in evidence that, before obtaining the note, he mentioned the matter to the guardian of Edward, who consented thereto. It may be that the consent of the guardian would have no special legal significance, but it has some bearing on the question whether Frank was paying the debt as a mere volunteer, or taking over the note to himself, to facilitate the guardian's efforts to settle the affairs of her ward. Had he been paying the note as a mere officious volunteer, or as a mere favor or gift to his brother, he would hardly have gone through the form of having the note endorsed to him. Moreover, the law does not look with favor upon any conclusion which compels a debtor acting in good faith to pay a debt twice over, and we think the finding of the trial court should be modified by reducing the amount of the judgment against Frank, as garnishee, by the sum of $162, to be credited as of the date of the trial below.

II. Concerning the liability of the garnishees for the amount assessed by the trial court as due from them to Edward, according to the terms of the deed from their mother, we are disposed to hold with the trial court.

3. GARNISHMENT: persons and property subject: debt created by "charge" on lands.

It is probably true that the mother of the parties could not make the garnishees debtors of their brother Edward without their consent, and that, when she made a deed to them of property charged with the obligation of the payment of a specified sum to Edward, they were not bound to accept the property or to assume the obligation; but, when they accepted the deed and took unto themselves its benefits, we

think they became personally bound to pay the sum specified. The deed provides in express words that the

4. **DEEDS: conditions and restrictions: charges on lands: implied agreement to pay.** first of the charges imposed upon the property is "to be paid by the grantees;" and, while this exact phrase is not repeated with each of the remaining charges, we think such is the clear meaning and purpose of the grantor, with respect to each and all of them. They took the land subject to the condition, and this is the equivalent of a promise to pay. The provision for a lien on the land operates only as security for the payment of the charge.

We find nothing in the authorities cited by appellant which requires any other conclusion. Some question is raised in argument as to the sufficiency of the showing concerning the judgment rendered against Edward Brogan, but there is no substantial ground for the objection.

With the modification hereinbefore indicated, the judgment below will be affirmed. Costs of the appeal will be apportioned, one half to the appellants and one half to the appellees.—*Modified and affirmed.*

GAYNOR, C. J., EVANS and PRESTON, JJ., concur.